**Michael E. Haglund,** OSB No. 772030
Email: mhaglund@hk-law.com
**Eric J. Brickenstein,** OSB No. 142852
Email: ebrickenstein@hk-law.com
**HAGLUND KELLEY LLP**
200 S.W. Market Street, Suite 1777
Portland, Oregon 97201
Phone: (503) 225-0777
Facsimile: (503) 225-1257

Attorneys for Plaintiff

IN THE UNITED STATES DISTRICT COURT

DISTRICT OF OREGON

(Portland Division)

| | |
|---|---|
| COAST CUTLERY CO., an Oregon corporation, <br><br> Plaintiff, <br><br> v. <br><br> SIMPLE PRODUCTS CORPORATION, a Utah corporation, <br><br> Defendant. | Case No.: <br><br> **COMPLAINT FOR FALSE ADVERTISEMENT IN VIOLATION OF THE LANHAM ACT § 1125; ILLEGAL INTERFERENCE WITH ECONOMIC RELATIONS** <br><br> **15 U.S.C. § 1125** <br><br> **JURY TRIAL DEMANDED** |

Plaintiff alleges as follows:

## INTRODUCTION

1.      This is an action under 15 U.S.C. § 1125 of the Lanham Act, which prohibits false advertising that misrepresents the nature, characteristics, or qualities of goods sold in interstate commerce.  Plaintiffs also alleges a state law claim for intentional interference with economic relations.

Page 1 – **COMPLAINT**

2.    Plaintiff is an Oregon corporation engaged in the manufacture, distribution, and sale of portable light products ("PLPs") in direct competition with defendant. Plaintiff's PLP business is being damaged by defendant's systematic false advertisement of its competing products.

## JURISDICTION AND VENUE

3.    This court has jurisdiction over the Lanham Act claim pursuant to 28 U.S.C. §§ 1331 and 1337. Supplemental jurisdiction over the Oregon common-law claim is also proper pursuant to 28 U.S.C. § 1367 because that claim is so related to the Lanham Act claim that it forms part of the same case and controversy under Article III of the United States Constitution.

4.    Venue in this district is proper under 28 U.S.C. § 1391 because the defendant regularly transacts business within this district and a substantial part of the events giving rise to plaintiff's claims occurred in this district.

## PARTIES

5.    Plaintiff Coast Cutlery Co. ("Coast") is an Oregon corporation originally established in 1919 as a specialty manufacturer of superior grade cutlery. In 1996, Coast expanded its product line to include its first handheld light. Today, Coast is engaged in the manufacture, distribution, and sale of a diverse line of high quality PLPs to consumers throughout the United States.

6.    Defendant Simple Products Corporation ("SPC") is a Utah corporation and a wholesaler of various durable goods that does business under multiple registered business names including "Flirty Aprons" and "Funpack Promotional Products." Since 2006, SPC has marketed a line of PLPs under the brand name "Lux-Pro."

Page 2 – **COMPLAINT**

## BACKGROUND

7.      Coast was founded in Portland, Oregon by Henry W. Brands Sr. in 1919.  Mr. Brands began his career in Oregon as a sales manager for a large wholesale hardware company, selling cutlery to local merchants.  After recognizing that the knives he was selling were inadequate to meet the needs of his constituents in the Pacific Northwest's salmon fishing industry, Mr. Brands partnered with a local metalsmith to design and construct the superior quality fillet knife that would become Coast's first commercial product.

8.      Mr. Brands continued to operate Coast as a small, specialty manufacturer until he passed the company on to his son, Henry Brands Jr., in 1952.  From 1954 to 1980, Henry Brands Jr. oversaw a significant diversification of Coast's product line and expansion of its geographic reach.  By 1980, Coast's products included scissors, shears, and kitchen cutlery and were being sold in California, the Rocky Mountain states, and throughout the Pacific Northwest.

9.      In the early 1980's, Coast transitioned to the third generation of Brands family leadership.  After taking over for his father as the company's chief executive, David Brands introduced new production techniques including the use of high-density plastics and specialized stainless-steel blades.  In 1996, Coast introduced its first handheld LED powered light.

10.      In the last two decades, Coast has continued to improve and expand its line of PLPs, incorporating patented optic systems and advanced electronic components.  Because of these efforts, Coast's PLPs are consistently among the brightest and most functional on the market.  Today, Coast markets its high-quality PLPs throughout the United States via major retailers including, among others, Lowe's Companies, Inc. ("Lowe's"), Walmart U.S. ("Walmart"), and Amazon.com, Inc. ("Amazon").

Page 3 – **COMPLAINT**

11.    Defendant SPC is a Utah corporation first registered in 2003.  It is a wholesaler of miscellaneous durable goods, doing business under several registered assumed business names. SPC's mix of products includes, among other things, the "Cutterpiller Pro" paper cutting device, "Bombshell Leather Bomber Hats," "Flirty Aprons," "Applecore" electronics chargers, "Build-A-Watch" accessories, and Lux-Pro brand PLPs.

12.    SPC routinely uses "gimmicks" to market its products.  According to SPC's website "[f]eatures make the difference" and Lux-Pro PLPs incorporate "more features at a lower cost."

13.    SPC's core business strategy across its range of products, including Lux-Pro PLPs, is the high-volume production and sale of low-cost, low-quality goods.

### THE PLP INDUSTRY

14.    Historically, the PLP industry did not employ standardized metrics or testing to measure PLPs' performance.  For years, a lack of standardization and oversight encouraged a proliferation of subjective, misleading representations by some industry participants about the quality and characteristics of their products.  This practice harmed both the public and competition in the industry by undermining consumers' ability to accurately compare and distinguish between competing products.

15.    In 2009, the American National Standards Institute, in collaboration with representatives of a range of industry participants including Coast, developed and approved new product quality standards for PLPs.  The new standards, known collectively as the ANSI/NEMA FL-1 ("ANSI Standard"), established protocols for measuring and communicating important performance attributes of PLPs.

Page 4 – **COMPLAINT**

16.     The ANSI Standard incorporates standardized testing and measurement of six criteria including light output, run time, peak beam intensity, beam distance, water resistance, and impact resistance.  Manufacturers who use the ANSI Standard may include a label on product packaging and advertisement that displays "ANSI Ratings" with respect to one or more of the performance attributes measured by the ANSI Standard.

17.     Consumers recognize and rely on a PLP's ANSI Ratings as an objective indicator of its quality and characteristics.  ANSI Ratings afford consumers the apples-to-apples comparison necessary to make informed purchasing decisions.

18.     After the approval of the ANSI Standard, industry participants in 2010 formed the Portable Light American Trade Organization ("PLATO").  PLATO is an independent, non-profit organization.  Corporate voting membership in PLATO is open to all U.S.-based companies that maintain a PLP manufacturing presence or PLP design, distribution, and inventory maintenance in the United States.  To foster broad participation, PLATO tiers annual membership dues based on the member company's annual revenue in portable lights, parts, and accessories.  Companies with $5.0 million or less in annual revenue pay an annual fee of only $1,000 for a voting corporate membership.

19.     PLATO's mission is to "promote the common interests of companies that manufacture portable lighting products, including the development and maintenance of product performance standards, industry education, market research and issue advocacy."

20.     Since its founding, PLATO has provided a mechanism for pro-competitive, self-policing of the PLP industry.  Specifically, PLATO created an Oversight Committee ("OC") comprised of an elected group of its members to confront false advertising by industry

Page 5 – **COMPLAINT**

participants, including the use of exaggerated ANSI Ratings. When the OC receives a credible complaint against an industry participant, it initiates a responsive protocol to investigate and deter the offending conduct. That protocol includes performing ANSI Standard testing, both in-house and by contract with an independent third party, do determine whether and to what extent a product's advertisement exaggerates its performance.

21.    Intertek Group plc ("Intertek") is a multi-national firm that provides independent third-party testing and analysis of commercial products. Intertek is a global leader in product quality and safety testing that employs over 38,000 workers in more than 100 countries.

22.    On April 21, 2015, PLATO entered into a collaborative relationship with Intertek whereby Intertek became the designated provider of third-party ANSI Standard testing for PLATO.

23.    The formation of PLATO and the OC, establishment of the ANSI Standard, and PLATO's collaborative relationship with Intertek have significantly mitigated false and misleading advertisement in the PLP industry. Coast has been an active participant throughout these pro-competitive developments. Coast was a member of the original standards committee that helped develop the ANSI Standard, has been a PLATO member since 2010, and has been a member of the OC since 2015.

## SPC'S FALSE ADVERTISING

### SPC Makes Literally False Claims About Lux-Pro PLPs' ANSI Ratings

24.    SPC, under the brand name Lux-Pro, manufactures and sells dozens of distinct PLP models. SPC advertises ANSI Ratings in connection with the sale of most or all of its PLPs.

Page 6 – **COMPLAINT**

HAGLUND KELLEY LLP
ATTORNEYS AT LAW
200 SW MARKET STREET, SUITE 1777
PORTLAND, OR 97201
PL01

25.     Many of the ANSI Ratings advertised by SPC in connection with several of its

PLPs grossly exaggerate the advertised product's actual performance.  By way of example, a

non-exhaustive sampling of SPC's false statements about the performance of its Lux-Pro PLPs

includes:

- Claiming that the LP630C has a run time of seven hours when in fact it has a run time of approximately thirty-six minutes (approximately -91% differential);

- Claiming that the LP600C has a run time of seven hours when in fact it has a run time of approximately forty-two minutes (approximately -90% differential);

- Claiming that the LP500C has a run time of six hours when in fact it has a run time of approximately one hour and five minutes (approximately -82% differential);

- Claiming that the LP1100BL has a light output of 280 lumens when in fact it has a light output of approximately 190 lumens (approximately -32% differential); and

- Claiming that the LP200C has a light output of 90 lumens when in fact it has a light output of approximately 54 lumens (approximately -40% differential).

26.     On October 14, 2014, Coast performed in-house, ANSI Standard testing on five

Lux-Pro models.  Coast tested each model for three ANSI Rated performance criteria including

light output, run time, and beam distance.  Every single model tested materially underperformed

its advertised ANSI Rating with respect to at least one of the tested criteria.  Three of the five

models tested did not meet the advertised ANSI Rating for *any* of the tested criteria.

27.     On November 16, 2014, Coast conducted ANSI Standard testing of three

additional Lux-Pro models.  Again, *not a single model* conformed to its advertised ANSI

Ratings.

28.     Subsequent testing by independent third parties including PLATO and Intertek

has likewise found that Lux-Pro PLPs do not perform as advertised.  For example, at PLATO's

Page 7 – **COMPLAINT**

request, on July 8, 2015 and again between January 15-26, 2016 Intertek performed ANSI

Standard testing on two Lux-Pro models including the Max 2D LXII and the LP 200 Mini TAC

LX. Both models materially underperformed their respective advertised ANSI Ratings for light

output.

29.    The OC is currently engaged in two ongoing investigations of SPC for false

advertisement related to several of its Lux-Pro products.

30.    Despite being investigated by the OC and being confronted with damning ANSI

Standard test results, SPC, incredibly, maintains that it is not misrepresenting its products'

ANSI Ratings and has refused to take corrective action.

31.    To this day, SPC is knowingly engaged in an illegal pattern and practice of

exaggerating Lux-Pro products' ANSI Ratings in order to gain an unfair competitive advantage

over its competitors, including Coast.

32.    SPC's illegal conduct described herein is not limited to isolated misstatements

regarding one or two of its models but, rather, pervades most or all of its line of Lux-Pro PLPs.

**SPC's False Advertisement Deceives Consumers and is Material to Purchasing Decisions**

33.    When purchasing a flashlight, headlamp, or other PLP, consumers are motivated

by fundamental aspects of performance such as how much light the product emits and for how

long.  These and other ANSI Ratings are material to consumers' purchasing decisions.

34.    Despite the importance of ANSI Ratings to the purchasing decision, consumers

typically lack the opportunity to independently evaluate critical aspects of product performance.

The equipment and calibration necessary to perform ANSI Standard testing is expensive and

inaccessible to the average consumer.  Further, even more casual testing such as using the

Page 8 – **COMPLAINT**

product in a natural setting over time is often impracticable, especially for online consumers who do not even see the physical product before purchase. Instead, consumers naturally and reasonably rely on manufacturers' representations of their products' ANSI Ratings.

35.    SPC's false advertisement includes literally false statements that are quantifiable and relate to the specific or absolute characteristics of Lux-Pro PLPs. SPC claims outright that Lux-Pro PLPs have ANSI Ratings that in fact they do not.

36.    Consumers reasonably rely on SPC's false statements of fact about Lux-Pro products. Consumer reliance on SPC's false statements is exacerbated by the fact that SPC misappropriates the ANSI Rating system, a standardized metric inherently trusted by consumers.

37.    SPC made and continues to make the false statements alleged herein for the purpose and with the intent of deceiving consumers that Lux-Pro PLPs have qualities and characteristics that exceed their actual performance.

**SPC Causes Falsely Advertised Lux-Pro PLPs to Enter Interstate Commerce**

38.    SPC made and continues to make the alleged false statements in connection with the commercial sale of its Lux-Pro PLPs. SPC's false statements pervade its online and tangible marketing, advertising, and other promotional media.

39.    SPC has a significant online presence including at www.simpleproducts.com and www.luxproflashlights.com and their respective subpages (collectively, SPC's "Websites"). From SPC's Websites, consumers throughout the United States can purchase Lux-Pro products directly from SPC.

Page 9 – **COMPLAINT**

40.     Each Lux-Pro model has its own product page on SPC's Website, where the particular model's claimed ANSI Ratings, including the false statements discussed herein, are prominently displayed directly below a link titled "ADD TO CART" that directs the prospective purchaser to a page containing purchase information and a second link to payment options.

41.     SPC also distributes its falsely advertised Lux-Pro products to large retailers such as Lowe's, Amazon, and Walmart, all of whom unquestionably operate in interstate commerce.

### SPC's Illegal False Advertisement Injures Coast

42.     Coast competes directly with SPC in the wholesale and retail markets for PLPs. Among other things, Coast and SPC both vie for limited inventory and shelf space at large retailers across the United States.

43.     Coast's line of products in the market today includes approximately forty-two distinct PLP models.  Coast performs ANSI Standard testing on all of its PLP models before introducing them to the market and uses ANSI Ratings in its advertising and other marketing materials to accurately represent the quality and characteristics of its PLPs to its retail and wholesale customers.

44.     Many of Coast's PLPs have qualities and characteristics that materially correlate to those claimed by SPC in connection with Lux-Pro PLPs.

45.     The majority of PLP manufacturers' sales, including those of Coast and SPC, derive from wholesale sales to large retail distributors such as Lowe's, Walmart, and Amazon. Relationships and accounts with these large customers are highly valuable and difficult to establish.  Because inventory and shelf space are finite, a retailer's decision to stock a given

Page 10 – **COMPLAINT**

PLP model frequently corresponds to the removal or exclusion of another competing model from inventory.

46.    SPC's false advertisement enables it to cut costs and market its inferior, but purportedly comparable products, at lower prices.  This creates an unfair competitive advantage that damages Coast's sales, business relationships, competitive positioning, and goodwill and reputation.

47.    SPC's illegal strategy has already begun to have its intended effect.  Lowe's is one of Coast's largest, most important wholesale customers.  Between June 29, 2013 and June 27, 2014, Coast's total PLP sales to Lowe's were approximately $2.5 million.  On or about June 28, 2014, Lowe's restructured its PLP inventory.  As a result, relying on SPC's false statements of the ANSI Ratings of Lux-Pro PLPs, Lowe's eliminated two of Coast's PLP models from its inventory and replaced them with falsely advertised, competing Lux-Pro models.

48.    During the 12-month period immediately following Lowe's' inventory restructure, Coast's total PLP sales to Lowe's fell below $1.3 million, resulting in lost revenue of approximately $1.2 million.  But for SPC's false advertising, Coast's PLP sales to Lowe's during that period would have met or exceeded its sales during the previous 12 months.  Thereafter, Coast has continued to lose sales to Lowe's that it would have enjoyed had SPC's false advertisement not induced Lowe's to divert its business.

49.    Maintaining inventory and shelf space at large, trusted retailers such as Lowe's is critical to Coast's reputation and competitive positioning.  Consumers commonly identify brands that enjoy greater shelf space at major retailers as "leading brands."  By usurping

Page 11 – **COMPLAINT**

HAGLUND KELLEY LLP
ATTORNEYS AT LAW
200 SW MARKET STREET, SUITE 1777
PORTLAND, OR 97201
PL01

business from Coast through illegal false advertising, SPC disparages Coast and devalues its products in the eyes of potential customers.

50.    SPC will continue to enjoy an unfair competitive advantage and draw business from Coast until the illegal false advertisement alleged herein is terminated, withdrawn from the market, and disclosed to consumers.

51.    Harm to Coast's sales, business relationships, competitive positioning, and goodwill and reputation will continue to accrue until SPC's misrepresentations and false statements are terminated, withdrawn from the market, and disclosed to consumers.

## FIRST CLAIM FOR RELIEF

### (False Advertising – 15 U.S.C. § 1125(a))

52.    Coast realleges and incorporates herein by reference the allegations contained in paragraphs 1-51 above.

53.    SPC's false statements alleged herein were made in the course of interstate commercial advertising and promotion of its Lux-Pro PLPs.

54.    SPC's false statements alleged herein were made for the purpose of improperly diverting business to SPC and away from its competitors, including Coast.  SPC has succeeded and will continue to succeed in gaining an unfair competitive advantage until its false advertisement is terminated, withdrawn from the market, and disclosed to consumers.

55.    As a direct and foreseeable result of SPC's false advertisement, Coast has been and will continue to be injured in the form of lost profits, damaged business relationships, impaired competitive positioning, and harm to its valuable goodwill and reputation in the estimated amount of $3.0 million but to be specifically proven at trial.

Page 12 – **COMPLAINT**

HAGLUND KELLEY LLP
ATTORNEYS AT LAW
200 SW MARKET STREET, SUITE 1777
PORTLAND, OR 97201
PL01

56.     Coast has no adequate remedy at law.  SPC's ubiquitous false advertising is severely damaging Coast's ability to compete fairly in the market.  Unless enjoined by this Court, SPC will continue to employ literally false claims about its products to improperly divert business from Coast.  The PLP market is a relatively small, finite market.  Once lost, inventory and shelf space with major retailers is difficult or impossible to recover.  Coast has lost and will continue to lose shelf space at major retailers due to SPC's improper and illegal actions.  Coast has established itself as an industry leader in the manufacture and sale of PLPs over the course of approximately 20 years.  If SPC is not enjoined, Coast's goodwill, reputation, and stature as an industry leader will be permanently jeopardized.  Coast's only adequate remedy requires injunctive relief.

57.     SPC's false advertisement harms the consuming public and enjoining SPC's illegal behavior serves the public interest.

58.     SPC has no legitimate interest whatsoever in continuing its illegal false advertisement.

59.     SPC's false statements of fact alleged herein constitute exceptional, malicious, fraudulent and deliberate conduct.  Accordingly, Coast is entitled to recover its reasonable attorneys' fees and costs in connection with this lawsuit.

## SECOND CLAIM FOR RELIEF

### (Intentional Interference with Economic Relations)

60.     Coast realleges and incorporates herein by reference the allegations contained in paragraphs 1-59 above.

Page 13 – **COMPLAINT**

61.    At all times material herein, Coast has a valuable, valid business relationship with Lowe's.

62.    Between approximately May 1, 2006 and March 15, 2012, David Kao ("Kao") was employed by Coast as a Sales Manager.  As Coast's Sales Manager, Kao was directly responsible for managing Coast's business relationship with Lowe's.  While employed by Coast, Kao developed important relationships with Lowe's' personnel responsible for making decisions regarding the purchase and allocation of shelf space to competing PLPs.

63.    On or about March 15, 2012, Kao voluntarily terminated his employment with Coast.  Shortly thereafter, Kao became employed by SPC.

64.    On and before June 28, 2014, Kao, acting as SPC's agent, engaged in a series of marketing and promotional efforts to Lowe's' personnel, during which Kao urged Lowe's to divert business from Coast to SPC.  In connection therewith, Kao communicated some or all of SPC's false statements alleged herein regarding the ANSI Ratings of Lux-Pro PLPs.  Kao and SPC's intent was to mislead Lowe's to believe that Lux-Pro PLPs possess qualities and characteristics that are comparable to Coast's competing PLP models.

65.    SPC knew or should have known that Kao's conduct would interfere with Coast's business relationship with Lowe's.

66.    SPC's false statements to Lowe's, made by and through its agent Kao, violate Section 1125 of the Lanham Act, 15 U.S.C. § 1125(a).

67.    SPC's false statements to Lowe's, made by and through Kao, contravened established PLP industry standards by misrepresenting the ANSI Ratings of Lux-Pro PLPs.

Page 14 – **COMPLAINT**

HAGLUND KELLEY LLP
ATTORNEYS AT LAW
200 SW MARKET STREET, SUITE 1777
PORTLAND, OR 97201
PL01

68.     As a direct and foreseeable result of SPC and its agent Kao's illegal conduct, Lowe's reduced its purchases of Coast's PLPs from the previous year by approximately $1.2 million between June 28, 2014 and June 26, 2015.

69.     But for its reliance on SPC's false statements of its products' ANSI Ratings, Lowe's would not have diverted its business from Coast to SPC.

70.     SPC and its agent Kao's illegal conduct alleged herein has injured Coast in the form of lost profits, damage to its valuable business relationship with Lowe's, impaired competitive positioning, and harm to its goodwill and reputation in the estimated amount of $3.0 million but to be specifically proven at trial.

71.     Coast has no adequate remedy at law.  Lowe's is a national leader in the retail sale of PLPs and, as such, is among Coast's most important customers.  Maintaining its business relationship with Lowe's is critical to Coast's business.  Coast will be unable to restore the damage to its business relationship with Lowe's until SPC's illegal false advertisement is enjoined.

**PRAY FOR RELIEF**

WHEREFORE, plaintiff prays that this Court award the following relief:

1.     Declare that SPC's conduct alleged herein constitutes false advertisement in violation of Section 1125 of the Lanham Act, 15 U.S.C. § 1125(a);

2.     Declare that SPC's conduct alleged herein illegally interfered with Coast's valuable business relationship with Lowe's;

3.     Preliminarily and permanently enjoin SPC and its agents and employees from continuing the illegal false advertising alleged above;

Page 15 – **COMPLAINT**

HAGLUND KELLEY LLP
ATTORNEYS AT LAW
200 SW MARKET STREET, SUITE 1777
PORTLAND, OR 97201
PL01

4.      Order SPC to remove from interstate commerce any advertising, marketing, or promotional materials that make false statements regarding the quality and characteristics of Lux-Pro PLPs;

5.      Order SPC to notify each of its wholesale and retail customers of its misrepresentations and false statements regarding the quality and characteristics of Lux-Pro PLPs;

6.      Order SPC to file with this Court and serve on Coast's counsel a detailed report documenting SPC's compliance with a preliminary injunction not more than fifteen days after the injunction issues and every 30 days thereafter until compliance is complete to the Court's satisfaction;

7.      Award compensatory damages for Coast's loss of profit, business relationships, competitive positioning, and valuable goodwill and reputation in the estimated amount of $3.0 million but to be specifically proven at trial;

8.      Award Coast's attorneys' fees and costs as allowed by law;

9.      Award pre-judgment and post-judgment interest as allowed by law; and

10.     Award such other relief as may be just and proper.


DATED this 11th day of May, 2016.

HAGLUND KELLEY LLP

By: _____

Michael E. Haglund, OSB No. 772030
Email: mhaglund@hk-law.com
Eric J. Brickenstein, OSB No. 142852
Email: jbrickenstein@hk-law.com
Attorneys for Plaintiff


Page 16 – **COMPLAINT**